USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/2/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
YUSIF ROBINSON,                                             :
                                      Plaintiff,            :
                                                            :     15 Civ. 5850 (LGS)
                 -against-                                  :
                                                            :     **OPINION AND ORDER**
CITY OF NEW YORK, et al.,                                   :
                                     Defendants.            :
                                                            :
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Yusif Robinson ("Plaintiff") filed this action against Defendants, Police Officers Richard Allison, Hoiping Lee and Terrance Williams (collectively, "Defendants") under 42 U.S.C. § 1983 for false arrest, malicious prosecution and denial of the right to a fair trial (*i.e.*, fabrication of evidence).[1] Plaintiff seeks money damages on all of his claims against Defendants. Defendants move for summary judgement. For the reasons below, the motion is granted in part and denied in part.

I. **BACKGROUND**

The facts below are drawn from the parties' 56.1 statements and other submissions on this motion, and are construed in Plaintiff's favor. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016).

On September 12, 2013, in the evening, Plaintiff was shopping for sneakers on Eighth Avenue around 41st and 42nd Streets. Defendants Allison, Lee, Williams and other officers were in that area to perform their narcotics enforcement duties. At the time, Defendant Allison had been a police officer for eighteen and a half years, fifteen of which were spent in narcotics

---

[1] Plaintiff voluntarily dismissed his claims for conspiracy and unlawful search. Plaintiff also voluntarily dismissed his *Monell* claim against the City of New York.

units, and he had received specialized narcotics training. He also had purchased narcotics as an undercover officer.

Defendant Allison observed two individuals -- Plaintiff and Leon Carter -- walking together and began to follow them. Defendant Allison asserts that he observed Plaintiff and Carter make hand-to-hand contact, which he believed to be a hand-to-hand drug transaction. Plaintiff disputes that a hand-to-hand exchange occurred or was observed; he claims that he and Carter "dapped" (*i.e.*, fist bumped) because Carter had complimented Plaintiff. Defendant Lee, who was walking about ten feet behind Defendant Allison, but could not see him on the crowded sidewalk, heard Defendant Allison on the police radio report that he had observed a hand-to-hand exchange, which Defendant Lee did not observe. Defendant Lee asserts that he saw Plaintiff throw $20 on the ground as the officers were about to arrest Plaintiff, and that he (Lee) retrieved the money from the ground. Plaintiff disputes that he threw money on the ground or that any officer picked up money from the ground.

Plaintiff, the alleged seller, and Carter, the alleged buyer were arrested. The officers searched Plaintiff at the arrest scene and recovered roughly $500 from his wallet. At the precinct, Carter was searched, and two twists of crack cocaine were found in his pocket.

Defendant Williams had been designated the "arresting officer" for the day. As such, he signed the Felony Complaint Affidavit, which states, among other things:

> I am informed by Detective Richard Allison . . . that he observed [Plaintiff Robinson] hand a small object to separately charged defendant Leon Carter [and] that he observed . . . Carter hand [Robinson] an amount of United States Currency in exchange for the small object.
>
> I am informed by Detective Hoiping Lee . . . that he recovered two (2) ten dollar bills from the ground, where he observed [Robinson] drop them.

2

Plaintiff denies that these events reported by Allison and Lee occurred. Defendant Williams relayed the information and the affidavit to the Assistant District Attorney to commence a criminal prosecution against Plaintiff.

On September 13, 2013, Carter was arraigned before Plaintiff was arraigned. Carter pleaded guilty and testified "Yes" when asked "did you give an individual by the name of Yus[i]f Robinson an amount of United States currency in exchange for crack cocaine?"

Plaintiff was indicted by a grand jury on September 23, 2013, for Criminal Sale of a Controlled Substance in the Third Degree and Tampering with Physical Evidence and jailed for about 42 days. During the course of the police investigation after Plaintiff's indictment, Defendant Williams went to the New York Times building to request video footage that might have confirmed or disproved whether a hand-to-hand exchange had occurred between Plaintiff and Carter. Because Defendant Williams did not request that footage until more than 30 days after September 12, 2016, it already had been over-written and was no longer available. After a jury trial in October 2014, Plaintiff was acquitted of the charges.

In May 2016, Carter signed two declarations recanting his statement that he had bought drugs from Plaintiff. In June 2016 he testified at a deposition that, at the time of his arrest with Plaintiff in 2013, a police officer at the precinct had told him: "[S]ay you got [the crack cocaine] from [Plaintiff] and you'll be let go." Carter further testified that the officer "had a picture of me being wanted in the precinct. And at that time I was, yeah, okay, I'll say anything."

## II.     STANDARD

Summary judgement is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The movant bears the initial burden of demonstrating the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Victory v. Pataki*, 814 F.3d 47, 58–59 (2d Cir. 2016). Courts must construe the evidence and draw all reasonable inferences in the non-moving party's favor. *See Wright*, 831 F.3d at 71–72. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pippins v. KMPG*, 759 F.3d 235, 252 (2d Cir. 2014) (quoting *Anderson*, 477 U.S. at 248).

## III. DISCUSSION

Defendants' motion for summary judgement is denied, except as to the false arrest and malicious prosecution claims against Defendant Lee and all claims against Defendant Williams.

### A. The False Arrest Claim

Defendants move for summary judgment as to the false arrest claim on the ground that there was probable cause to arrest Plaintiff. Defendants' argument fails because, construing the alleged facts in Plaintiff's favor, Defendants lacked probable cause to arrest Plaintiff.

"In analyzing § 1983 claims for unconstitutional false arrest, [the Second Circuit] generally look[s] to the law of the state in which the arrest occurred." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016). "Under New York law, a false arrest claim requires a plaintiff to show that the defendant intentionally confined him without his consent and without justification." *Id.* (internal quotation marks omitted). Probable cause "is an absolute defense" and "exists when the officers have knowledge or reasonably trustworthy information of facts and

4

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (internal quotation marks omitted). Probable cause is determined based on the facts known to the arresting officer at the time of the arrest. *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016).

The critical facts underlying the arrest were Defendant Allison's alleged observation of a hand-to-hand exchange -- cash for a small object -- between Plaintiff and Carter; and Defendant Lee's observation that Plaintiff threw $20 on the ground as he was about to be arrested. Plaintiff disputes these facts -- asserting that he and Carter merely fist bumped, that no hand-to-hand exchange occurred, that no money was thrown to the ground, and that Defendants' observations are fabricated. If a reasonable jury were to credit Plaintiff's version of the facts, Defendants would not have had probable cause to arrest him. "Physical proximity to criminal behavior without more is insufficient to establish probable cause." *Perez v. Duran*, 962 F. Supp. 2d 533, 538 (S.D.N.Y. 2013). On this ground, summary judgment is not warranted.

The crack cocaine later found on Carter at the precinct is irrelevant because it was not known to the officers when they arrested Plaintiff. *Cf. Smith v. City of New York*, No. 04 Civ. 3286, 2010 WL 3397683, at *1, *7 (S.D.N.Y. Aug. 27, 2010) (finding probable cause to arrest where it was undisputed that the plaintiff and suspected buyer exchanged money, and "the suspected buyer was found to be in possession of a significant amount of cocaine moments later"). Because of a material factual dispute regarding Plaintiff's conduct, which allegedly prompted the arrest, Defendants' contention that it is entitled to summary judgment on the ground that there was probable cause to arrest Plaintiff is rejected.

### B. The Malicious Prosecution Claim

Defendants argue that they are entitled to summary judgment on the malicious prosecution claim because Defendants had probable cause to prosecute Plaintiff. This argument fails because Plaintiff has adduced evidence from which a reasonable jury could find that Defendants lacked probable cause to prosecute him.

Defendants contest only the issue of probable cause. Probable cause is a complete defense to a claim of malicious prosecution, *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014), "and indictment by a grand jury creates a presumption of probable cause," *Manganiello v. City of New York*, 612 F.3d 149, 162 (2d Cir. 2010) (internal quotation marks omitted). "That presumption may be rebutted only by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (internal quotation marks omitted). The standard for probable cause to charge is "slightly higher" than for probable cause to arrest, *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013), and requires "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty," *id.* The court considers probable cause "in light of facts known or reasonably believed at the time the prosecution was initiated." *Weiner v. McKeefery*, 90 F. Supp. 3d 17, 34 (E.D.N.Y. 2015); *accord Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 957 n.3 (2d Cir. 2015).

Defendants claim that, "[e]ven assuming that there was not probable cause for plaintiff's initial arrest, and that there was *still* not probable cause even after the crack cocaine was recovered from Carter, there would nevertheless have been probable cause to prosecute plaintiff." The defense argument is based on Carter's guilty plea and allocution, before Plaintiff's arraignment, that Carter had bought cocaine from Plaintiff, and on the presumption of

6

probable cause accorded a grand jury indictment. Although this argument might have merit as to anyone who was unaware of the alleged fabrication of evidence, the argument is unavailing as to Defendants.

Plaintiff's evidence of Defendants' alleged fabrication of their own observations, and their alleged subornation of perjury from Carter is sufficient to create a triable issue of fact regarding whether there was probable cause to prosecute. The issue is whether Defendants reasonably believed, when the prosecution commenced, that Plaintiff was guilty of selling drugs. If so, then they had probable cause to charge, which defeats the malicious prosecution claim. Here, Plaintiff has adduced evidence from which a reasonable jury could conclude that Defendants had no such reasonable belief, and therefore no probable cause to charge. *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 456–57 (E.D.N.Y. 2015) ("Defendants' alleged coercion of [the witnesses] serves to rebut the presumption of probable cause associated with the grand jury indictment."); *Zahrey v. City of New York*, No. 98 Civ. 4546, 2009 WL 54495, at *10 (S.D.N.Y. Jan. 7, 2009) (finding a triable issue of fact regarding plaintiff's malicious prosecution claim where plaintiff alleged that defendants "pressured and/or induced" one of plaintiff's criminal associates "to provide evidence and used such evidence in the investigation and prosecution"); *Jovanovic v. City of New York*, No. 04 Civ. 8437, 2006 WL 2411541, at *9–10 (S.D.N.Y. Aug. 17, 2006) (denying summary judgment as to malicious prosecution claim where, according to the complaint, the defendant officer "created and forwarded false information to the prosecution" and "falsely testified against [the plaintiff] at the grand jury and at trial").

    C.    **The Denial of the Right to a Fair Trial Claim**

Defendants' contention that no reasonable jury could find that Defendants violated his right to a fair trial also is rejected. "When a police officer creates false information likely to

7

influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Betts*, 751 F.3d at 83–84 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). The elements of a fair trial claim based on fabrication of information are "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). A plaintiff may bring a fair trial claim even if the plaintiff's criminal case is dismissed before trial, and even if the officer had probable cause to arrest. *Ricciuti*, 124 F.3d at 127, 130 (dismissing the case before trial); *Garnett*, 838 F.3d at 277–78 (holding fair trial claim based on false information "can stand even if the officer had probable cause to arrest"). In this sense, "denial of a right to a fair trial" is somewhat of a misnomer.

Here, Plaintiff has adduced evidence that Defendant police officers fabricated their observations that Plaintiff engaged in conduct highly likely to be the sale of narcotics; that the officers' observations were likely to influence a jury's verdict; that Defendants Allison and Lee recounted their observations to Defendant Williams to forward to prosecutors; and that Plaintiff was incarcerated for 42 days after his arrest. Although whether Defendants fabricated their observations is factually disputed, if the jury were to credit Plaintiff's evidence, it could reasonably find for Plaintiff on his fair trial claim.

Defendants argue that "plaintiff alleges only that the defendant police officers gave false testimony against him" and that "[f]alse testimony alone cannot form the basis for a fabrication of evidence claim." Defendants are correct that grand jury testimony and trial testimony are

absolutely privileged. *Coggins v. Buonora*, 776 F.3d 108, 112 (2d Cir. 2015) (noting that *Rehberg v. Paulk*, 566 U.S. 356 (2012), "expressly extended to grand jury witnesses, including police officers, the same [absolute] immunity that had previously been enjoyed by witnesses at trial," and stating that "a grand jury witness, including a law enforcement officer, has absolute immunity from any § 1983 claim based on the witness' testimony") (internal quotation marks omitted)).  However, Defendants' argument misstates Plaintiff's claim.  The Complaint alleges that "Defendant Williams created official paperwork memorializing false allegations against the plaintiff, knowing that said official paperwork would be relied upon by the New York County District Attorney [("NYCDA")] to commence a criminal prosecution against the plaintiff."  The Complaint further alleges that Defendants made various statements and "knew their statements were untrue," and that "Defendant Williams's presentation to the NYCDA of the defendants' false allegations and fabricated evidence against plaintiff was the proximate cause of the NYCDA's decision to commence a prosecution against the plaintiff."  Absolute immunity does not extend to such conduct; otherwise a police officer could immunize his unconstitutional conduct merely by later testifying about it before the grand jury.  *See id.* at 113.

Defendants also erroneously argue that "[s]ince plaintiff was found not guilty at trial, he was not deprived of his right to a fair trial."  This statement is directly contrary to the Second Circuit's decision in *Garnett*, 838 F.3d 265, where the Court affirmed a jury verdict for plaintiff on his § 1983 fair trial claim based on the fabrication of evidence by police officers, even though plaintiff had been acquitted at the state criminal trial. *Id.* at 270, 273–75.  Further, a plaintiff asserting a fair trial claim need show only that the "the false information *was likely to* influence a jury's decision," not that it actually did. *Id.* at 279–80 (emphasis added).

As Plaintiff has presented evidence from which a reasonable jury could find that he has satisfied all of the elements of a fair trial claim, summary judgment on that claim is denied on this basis.

### D. Qualified Immunity

Defendant Allison is not entitled to qualified immunity at this stage of the proceedings as there is a material dispute as to what he observed, and his observations provided the basis for Plaintiff's arrest, prosecution, and trial. Defendants Lee and Williams are entitled to qualified immunity on the false arrest and malicious prosecution claims because it is undisputed that they relied on Defendant Allison's account of Plaintiff's alleged culpable conduct in making the arrest and furthering his prosecution. Defendant Williams is entitled to qualified immunity on the fair trial claim as well, because Plaintiff has not proffered evidence sufficient for a reasonable jury to conclude that he was privy to any fabrication of evidence.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). Where there is no dispute as to the relevant facts, the applicability of qualified immunity is a question of law for the court to decide. *Compare Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) ("[T]he ultimate legal determination of whether qualified immunity attaches to a law enforcement agent's actions is a question of law better left for the court to decide." (internal quotation marks omitted)), *with Taravella v. Town of Wolcott*, 599 F.3d 129, 135 (2d Cir. 2010) (noting that qualified immunity presents a "mixed question of law and fact," and "[a]lthough a conclusion . . . as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved

by the factfinder" (internal quotation marks omitted)). "Where . . . there are facts in dispute that are material to a determination of reasonableness, summary judgment on qualified immunity grounds is not appropriate." *McKelvie v. Cooper*, 190 F.3d 58, 63 (2d Cir. 1999); *accord Simon v. City of New York*, No. 14 Civ. 8391, 2017 WL 57860, at *4 (S.D.N.Y. Jan. 5, 2017).

"Qualified immunity protects an officer so long as he had arguable probable cause to arrest, which exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Dancy*, 843 F.3d at 107 (internal quotation marks omitted); *accord Simon*, 2017 WL 57860, at *4. "Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful. . . . [P]robable cause does not turn on whether [the fellow agent's] observations were accurate, but on whether [the arresting agent] was reasonable in relying on those observations." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted and alterations in original). *See also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (granting qualified immunity to officers, in part, because "police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed").

With respect to Defendant Allison, qualified immunity is inapt. All of the claims against him -- false arrest, malicious prosecution and denial of a fair trial -- turn on whether he fabricated his observations of Plaintiff's conduct. The Fourth and Fourteen Amendments to the Constitution provide clearly established constitutional rights that protect against arrest, prosecution and trial based on a police officer's fabricated information. *See Ricciuti*, 124 F.3d at 130; *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000). "Qualified immunity is unavailable where, as here, the action violates an accused's clearly established constitutional rights, and no

11

reasonably competent police officer could believe otherwise." *Ricciuti*, 124 F.3d at 130; *see also Golino v. City of New Haven*, 950 F.2d 864, 871 (2d Cir. 1991) ("Where an officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, as where a material omission is intended to enhance the contents of the affidavit as support for a conclusion of probable cause, . . . the shield of qualified immunity is lost.") (internal citations omitted).

Defendants Lee and Williams are entitled to qualified immunity for the false arrest and malicious prosecution claims because they were entitled to rely on Defendant Allison's report that a drug transaction involving Plaintiff had occurred. *See Panetta*, 460 F.3d at 395. The allegation that Defendant Lee fabricated his observation that Plaintiff threw money on the ground does not change this result. Even were this allegation true, Defendant Lee had probable cause to arrest based on Defendant Allison's radio report of Plaintiff's engaging in a hand-to-hand drug transaction. *See Ricciuti*, 124 F.3d at 127–29 (holding that defendants were entitled to qualified immunity for the false arrest claim but not the fabrication of evidence claim); *Alicea v. City of New York*, No. 13 Civ. 7073, 2016 WL 2343862, at *6 & n.3 (S.D.N.Y. May 3, 2016) (holding that officers were entitled to qualified immunity for false arrest when they relied on a radio report of a colleague's observation, even though they allegedly later used excessive force and one of them signed a false affidavit). However, Defendant Lee's alleged fabrication does give rise to separate liability on the fair trial claim, for which he is not entitled to qualified immunity. A "Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause" for the arrest. *Garnett*, 838 F.3d at 277–78. Because "fabrication of evidence violate[s] a

'clearly established constitutional right,'" defendant "officers [are] not entitled to qualified immunity." *Id*.

Defendant Williams is entitled to qualified immunity on the fair trial claim because it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act. *Betts*, 751 F.3d at 82–83. Plaintiff has failed to proffer evidence sufficient for a reasonable jury to conclude that Defendant Williams was aware of, or participated in, any fabrication of evidence. Plaintiff's argument that Defendant Williams' knowing participation can be inferred from his failure to procure the video footage from the New York Times building is incorrect. The evidence does not show that Defendant Williams knew how the long the tape would be available, or that he intentionally delayed seeking it until such time that it would not be available, nor does Plaintiff identify any legal duty that Defendant Williams had to procure the tape. *See Hicks v. City of New York*, No. 15 Civ. 4888, 2017 WL 532304, at *10 (S.D.N.Y. Feb. 8, 2017) ("[T]here is no constitutional right to an adequate investigation. A police officer's failure to pursue a particular investigative path is not a constitutional violation.") (internal quotation marks and citation omitted). Defendant Williams is entitled to qualified immunity on all three claims and is dismissed from the case.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED, except that as to Defendant Lee, summary judgment is GRANTED on the false arrest and malicious prosecution claims; and as to Defendant Williams, summary judgment is GRANTED on all claims. The Clerk of Court is directed to dismiss Defendant Williams from the case and close the motion at Docket No. 40.

Dated: June 1, 2017
      New York, New York

                                                 LORNA G. SCHOFIELD
                                        UNITED STATES DISTRICT JUDGE